UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NEXTERA ENERGY MARKETING, LLC,

     Plaintiff,

    v.

MACQUARIE ENERGY LLC,

     Defendant.

Case No.:

**COMPLAINT**

---

1.     This contract action involves the failure of Macquarie Energy LLC ("Macquarie") to deliver natural gas to NextEra Energy Marketing, LLC ("NextEra"). Despite agreeing to deliver 30,000 MMBtu[1] of natural gas to NextEra daily at a delivery pool within a pipeline system in Oklahoma operated by ONEOK Gas Transportation, L.L.C. ("OGT Pool"), between February 14 and 19, 2021, Macquarie delivered only a fraction of that amount and refused to pay contractually-specified damages. Macquarie did not take reasonable steps to deliver gas to NextEra as required, and Macquarie's failure to perform was not excused. NextEra is entitled to contractually-specified damages, including interest, fees, and expenses.

## PARTIES

2.     NextEra (f/k/a NextEra Energy Power Marketing, LLC) is a Delaware limited liability company headquartered in Florida that is in the business of buying and selling power, natural gas, carbon, and environmental attributes domestically and abroad. NextEra is an indirect, wholly-owned subsidiary of NextEra Energy, Inc., a Florida corporation headquartered in Florida.

---

[1] "MMBtu" is an abbreviation for one million British thermal units, a measure of the energy content or heating value of natural gas when burned.

3.      Macquarie (f/k/a Macquarie Cook Energy, LLC and Macquarie Cook Power Inc.) is a Delaware limited liability company that is in the business of buying and selling natural gas and wholesale electric power.  Macquarie's sole member and 100% owner is Macquarie Energy North America Trading, Inc., a Delaware corporation headquartered in Texas.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction per 28 U.S.C. § 1332(a) because the parties are completely diverse and the amount in controversy exceeds $75,000.

5.      Macquarie is subject to personal jurisdiction per N.Y. Gen. Oblig. Law § 5–1402 because it submitted to this Court's jurisdiction in Section 13(b) of the parties' contract.

6.      Venue is proper in this District per 28 U.S.C. § 1391(b)(3) and Section 13(b) of the parties' contract.

## FACTS

### A.  The Parties' Contract

7.      The parties' gas transactions are governed by an ISDA Master Agreement dated as of December 17, 2009, which is governed by New York law and incorporates and includes, among other documents, a Schedule to the ISDA Master Agreement; an ISDA North American Gas Annex; a 2009 Amendment Addendum to the Gas Annex; and trade-specific confirmations that identify the price and quantity of gas to be delivered, the delivery period and location, and the pipeline to be used for delivery (collectively, the "Contract").

8.      The Contract specifies a remedy for non-delivery of contracted-for gas.  That remedy includes cover damages for undelivered gas that the buyer is able to replace plus market price damages for gas that is not replaced.

9.      Specifically, the Addendum provides that the buyer shall be entitled to payment "in an amount equal to the positive difference, if any, between the purchase price paid by Buyer

2

utilizing the Cover Standard and the Contract Price … multiplied by the difference between the

Contract Quantity and the quantity actually delivered by Seller…."  The Gas Annex defines the

"Cover Standard" to mean:

> that if there is an unexcused failure to take or deliver any quantity of Gas pursuant to this Gas Annex, then the performing party shall use commercial reasonable efforts to … if Buyer is the performing party, obtain Gas, … at a price reasonable for the delivery area or production area ….

10.     The Addendum goes on to provide:

> in the event that Buyer has used commercially reasonable efforts to replace the Gas … and no such replacement … is available for all or any portion of the Contract Quantity of Gas, then in addition … , the sole and exclusive remedy of the performing party with respect to the Gas not replaced or sold shall be an amount equal to any unfavorable difference between the Contract Price and the Spot Price [as defined below], adjusted for such transportation to the applicable Delivery Point, multiplied by quantity of such Gas not replaced or sold.

11.     The Gas Annex in turn defines "Spot Price" as "the price published as the Spot

Price Index for the relevant day…."  "Spot Price Index" means, "with respect to a Gas Transaction,

unless otherwise specified in the Confirmation for that Transaction, the 'Daily Midpoint' price set

forth in Gas Daily (published by Platts) … under the listing applicable to the geographic location

closest in proximity to the Delivery Point(s) for the relevant Day…."

12.     If there is a payment dispute, the Gas Annex, as amended by the Addendum,

provides that the "invoiced party will pay such amount as it concedes to be correct … [and] provide

supporting documentation acceptable in industry practice to support the amount paid or disputed

without undue delay."

13.     The Gas Annex further provides that a gas delivery obligation can only be excused

based on limited force majeure events specified in the Contract, and only if, *inter alia*, the party

invoking force majeure (i) provides "written notice with reasonably full particulars of the event …

as soon as reasonably possible," (ii) "make[s] reasonable efforts to avoid the adverse impacts …

[and] resolve the event … in order to resume performance," and (iii) "remed[ies] the condition and … resume[s] the performance … with reasonable dispatch."

### B. Macquarie Breaches the Contract

14.     The parties entered into confirmations that required Macquarie to deliver 30,000 MMBtu of gas to NextEra each day from February 14 to 19, 2021, at OGT Pool, at a weighted-average price of $2.6425 per MMBtu.

15.     During the relevant period, Macquarie delivered less than 65,000 MMBtu of the 180,000 MMBtu it had agreed to sell to NextEra, and never provided a valid excuse for its failure to deliver the rest.

16.     On February 18, 2021, four days after it stopped delivering the required quantities of gas in full, Macquarie sent a two-sentence letter purporting to provide "notification of an event of Force Majeure … until further notice."  However, Macquarie's performance under the Contract was not excused by force majeure.  OGT Pool remained an active market during the relevant period, and both the parties and other market participants were able, using reasonable efforts, to transact and deliver gas there between February 14 and 19, 2021.  Macquarie has never, indeed, indicated that it made any efforts to "remedy the condition and … resume performance," as required by the Contract, or explained why any such efforts failed.  On information and belief, Macquarie simply concluded that increases in gas prices caused by winter weather during the relevant period made its adherence to the Contract economically inopportune.

17.     NextEra replaced a significant portion of the gas that Macquarie failed to deliver at a cost of more than $18 million, accounting for an offsetting transaction.  The remaining undelivered gas was worth nearly $40 million at the spot prices specified in the Gas Annex.

18.     NextEra invoiced Macquarie $57 million in contract damages.  Macquarie refused to pay, and failed to provide contractually-required documentation supporting the amount of NextEra's invoice that it disputes.

19.     NextEra duly notified Macquarie that it disputed Macquarie's purported force majeure declaration and that Macquarie's failure to pay the amounts due would constitute an Event of Default as defined in the Contract.  Macquarie continues to refuse to pay and NextEra is now entitled to recover its contract damages, together with attorney's fees and out-of-pocket expenses.

## COUNT I

### Breach of Contract

20.     NextEra repeats and incorporates the above allegations as if set forth fully herein.

21.     The Contract is a valid and binding agreement between the parties.

22.     NextEra timely and fully performed all of its obligations under the Contract and satisfied any and all conditions precedent to the recovery of damages.

23.     Macquarie breached the Contract, including by failing to deliver the required gas and failing to pay the contractually-required damages.

24.     Macquarie has no valid excuse for its breaches.

25.     Macquarie is liable to NextEra in an amount to be proven plus attorney's fees, expenses, and pre- and post-judgment interest.

### PRAYER FOR RELIEF

WHEREFORE, NextEra respectfully requests that this Court enter judgment:

    a.  Determining that Macquarie breached the Contract;

    b.  Awarding NextEra an amount to be proven;

    c.  Awarding NextEra prejudgment interest;

d. Awarding NextEra its attorney's fees and other costs and expenses incurred to date and in connection with the enforcement of its rights under the Contract, including the costs of this action and any collection efforts; and

e. Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
February 16, 2022

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

By: */s/ Isaac Nesser*

Sascha N. Rand
Isaac Nesser
Nathan Goralnik
Kathryn Bonacorsi
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel:  212-849-7000
Fax: 212-849-7100
sascharand@quinnemanuel.com
isaacnesser@quinnemanuel.com
 nathangoralnik@quinnemanuel.com
kathrynbonacorsi@quinnemanuel.com

*Counsel for Plaintiff NextEra Energy Marketing, LLC*